UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PROGRESSIVE MOUNTAIN INSURANCE COMPANY,<br><br>    Petitioner,<br><br>    v.<br><br>MOBILE MAINTENANCE ON THE GO, LLLP, HELENE JULIEN and JESSE ESPINOZA,<br><br>    Respondents. | CIVIL ACTION NO.<br>1:20-CV-1665-JPB |

**ORDER**

This matter comes before the Court on Progressive Mountain Insurance Company's ("Petitioner") Renewed Motion for Summary Judgment [Doc. 87]. This Court finds as follows:

**PROCEDURAL HISTORY**

In the instant case, the parties dispute whether an insurance policy, issued by Petitioner to Mobile Maintenance on the Go, LLLP ("Mobile Maintenance"), provides coverage for injuries sustained by Helene Julien ("Julien") following a 2018 car accident involving an uninsured motorist. Petitioner filed a Petition for Declaratory Judgment on April 17, 2020, and an Amended Petition for Declaratory Judgment on June 1, 2020, against Mobile Maintenance, Julien and Jesse

Espinoza.[1]  [Doc. 1]; [Doc. 11].  Petitioner moved for default judgment as to Mobile Maintenance on October 21, 2020.  [Doc. 28].  On February 17, 2021, Petitioner filed a motion for summary judgment.  [Doc. 40].  Jesse Espinoza and Julien (together, "Respondents") then filed a motion to withdraw admissions—some of which formed the basis of Petitioner's summary judgment motion—on February 26, 2021.  [Doc. 46].  On February 10, 2022, the Court granted the motion to withdraw admissions and denied without prejudice Petitioner's motion for summary judgment.[2]  [Doc. 85].  Petitioner filed a Renewed Motion for Summary Judgment on February 18, 2022.  [Doc. 87].

## FACTUAL HISTORY

The Court derives the facts of this case from Petitioner's Statement of Undisputed Material Facts, [Doc. 87-2]; Respondents' Response to Petitioner's Statement of Material Facts Not in Dispute, [Doc. 89]; and Petitioner's Reply to Respondents' Response to Petitioner's Statement of Material Facts Not in Dispute, [Doc. 92-1].  The Court also conducted its own review of the record.

---

[1] Petitioner initially named Brandon Donald, the uninsured motorist, as a respondent, but the claims against him were dismissed without prejudice upon consent of the parties on March 25, 2021.  [Doc. 66].
[2] Also on February 10, 2022, the Court denied without prejudice Petitioner's motion for default judgment as to Mobile Maintenance, explaining that Petitioner could refile the motion pending the adjudication of the merits of the case with respect to the other respondents.  [Doc. 86].

The Local Rules of this Court require a respondent to a summary judgment motion to include with its responsive brief "[a] response to the movant's statement of undisputed facts." N.D. Ga. Civ. R. 56.1(B)(2)(a). The Local Rules make clear that the Court will deem each of the movant's facts admitted unless the respondent refutes or objects to the fact or shows that the fact is either immaterial or unsupported by the record.[3] Further, in accordance with the Local Rules, this Court will not consider unsupported facts. The Court will, however, use its discretion to consider all facts the Court deems material after reviewing the record. For the purpose of adjudicating this Motion, the facts are as follows.

Mobile Maintenance is a family cleaning business operated by Julien, Jesse Espinoza (Julien's daughter) and Javier Espinoza (Jesse Espinoza's husband). In March 2015, United Services Automobile Association ("USAA") issued an automobile insurance policy to Jesse Espinoza[4] that covered two vehicles. [Doc.

---

[3] Respondents responded to many facts by stating that they "could not recall" certain details. See, e.g., [Doc. 89, p. 11] ("Respondents cannot recall how all payments were made but deny they requested a business policy."). The Local Rules set forth three distinct bases for objecting to a fact; an inability to remember a given fact, absent more, is not one of them. Consequently, where Respondents claim an inability to recall a fact, the Court will deem it admitted.

[4] At some point between 2015 and the filing of this case, Jesse Espinoza changed her name from "Jesse Julien." Although some documents were signed by "Jesse Julien," the Court refers to "Jesse Espinoza" for the sake of clarity. Additionally, her name appears as both as "Jesse Espinoza" and "Jessie Espinoza" throughout the filings. The Court will use the former spelling, which appears on the docket.

89, pp. 7–8]. Later, in 2016, Jesse Espinoza completed a vendor agreement for Mobile Maintenance to clean apartments owned by AMLI, listing Mobile Maintenance as the vendor. Id. at 9–10. That agreement required Mobile Maintenance to obtain at least $1,000,000 in automobile liability insurance. [Doc. 84-3, p. 4]. Jesse Espinoza thus asked USAA to increase the coverage limits on the policy that was issued in 2015. [Doc. 88, p. 3]. USAA was unable to increase the policy limits and referred Jesse Espinoza to Petitioner, who issued a commercial automobile policy with the necessary coverage.[5] Id. at 4.

At issue here are the terms of the policy from Petitioner (the "Policy") that provided coverage from January 18, 2018, to January 18, 2019,[6] for a 2007 Dodge Ram, and specifically, whether those terms extend coverage to Julien. [Doc. 89, p. 2]; [Doc. 40-2, p. 3]. Around 10:52 PM on October 15, 2018, in Gwinnett County, Georgia, a Honda Civic—driven by Brandon Donald, an uninsured motorist—

---

[5] Petitioner received limited information about Jesse Espinoza's prior insurance coverage when she applied for a policy. Petitioner received the number of the USAA policy, dates of coverage and the bodily injury coverage limit, see [Doc. 89, p. 12], but was not provided with information about the nature of the USAA policy or the name of the insured party, [Doc. 84-10, pp. 6–7]. When deposed, Petitioner's 30(b)(6) representative testified that "an application was submitted through [a USAA agent] requesting a commercial auto policy issued to Mobile Maintenance on the Go." [Doc. 84-10, p. 57]. That representative also explained that Jesse Espinoza requested a certificate of insurance, which can only be issued under a commercial automobile policy. Id. at 52.
[6] It appears that the subject Policy was a renewal of a prior policy issued by Petitioner. See [Doc. 84-5, p. 68].

4

struck Julien when she was walking from the grocery store to her daughter's house. [Doc. 89, pp. 1–2]. Julien sustained severe injuries in the accident. Id. at 6. On October 2, 2020, Julien filed suit against Brandon Donald in the State Court of Gwinnett County and served Petitioner as the purported underinsured motorist carrier.[7] Id. at 7; see [Doc. 40-3].

The Policy named Mobile Maintenance as the insured, and premium payments for the Policy were made via electronic transfers from Mobile Maintenance's bank account. [Doc. 89, pp. 2, 10–11]. When applying for the Policy, Jesse Espinoza represented that the vehicle to be insured was used only for business purposes. Id. at 6.

Two sections of the Policy are relevant to this action: the Uninsured Motorist Coverage Endorsement and the Medical Payments Coverage Endorsement (the "Endorsements"). The Uninsured Motorist Coverage Endorsement stated that Petitioner would

> pay for damages, other than punitive or exemplary damages, which an insured is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury or property damage:

---

[7] The record shows that Jesse Espinoza and Javier Espinoza were the named insureds on a GEICO automobile insurance policy that was in effect from June 7, 2018, to December 7, 2018. See [Doc. 84-8, p. 3]. Accordingly, that policy—which provided $50,000 in uninsured motorist coverage—was effective at the time of the October 15, 2018 accident. See id. In fact, Julien received $50,000 under the GEICO policy in settlement of the claims arising from the accident. See [Doc. 84-9].

5

>    1. [s]ustained by an insured;
>    2. caused by an accident; and
>    3. arising out of the ownership, maintenance, or use of an uninsured auto.

Id. at 4. The Uninsured Motorist Coverage Endorsement provided the following definition of an "insured":

> if the named insured shown on the declarations page is a corporation, partnership, organization, or any other entity that is not a natural person:
> (i) any person occupying an insured auto or temporary substitute auto; and
> (ii) any person who is entitled to recover damages covered by this endorsement because of bodily injury sustained by a person described in (i) above.

Id. The Medical Payments Coverage Endorsement provided coverage for expenses due to bodily injury "sustained by an insured; . . . caused by an accident; and . . . arising out of the ownership, maintenance or use of a motor vehicle or trailer." Id. at 5. The Medical Payments Coverage Endorsement defined "insured" as follows: "if the named insured shown on the declarations page is a corporation, partnership, organization, or any other entity that is not a natural person, [an 'insured' is] any person occupying [the] insured auto, temporary substitute auto, or a trailer while attached to an insured auto." Id. at 6.

In the Motion before the Court, Petitioner seeks a declaratory judgment that it owes no obligation to Julien, while Respondents claim that Julien is entitled to

6

coverage under the Policy's Uninsured Motorist Coverage Endorsement and Medical Payments Coverage Endorsement.

## ANALYSIS

### A.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Allen, 121 F.3d at 646 (quoting Anderson, 477 U.S. at 251).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all

7

factual inferences arising from it in the light most favorable to the nonmoving party." Id.  After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating that summary judgment is improper because a material issue of fact does exist. Id.  However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 251). If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

**B.     Claim for Declaratory Relief**

Petitioner argues that it is entitled to summary judgment because Julien is not an "insured" under the terms of the Policy and is thus not eligible for coverage under either the Uninsured Motorist Coverage Endorsement or the Medical Payments Coverage Endorsement.  Respondents concede that Mobile Maintenance is the named insured on the Policy.  However, they contend that this was an error and that they intended to procure a personal policy in the name of Javier Espinoza (who is not a party to this action) or Jesse Espinoza—in which case Julien, as a

relative of the insured, would receive coverage—rather than a commercial automobile policy insuring Mobile Maintenance.  Below, the Court considers the Policy's terms as applied to this case before turning to the parties' respective intentions.

Under Georgia law, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms."  Richards v. Hanover Ins. Co., 299 S.E.2d 561, 563 (Ga. 1983).  Therefore, "as with any contract," the Court begins "with the text of the contract itself."  Reed v. Auto-Owners Ins. Co., 667 S.E.2d 90, 92 (Ga. 2008).  If the contract is unambiguous, the Court's role "is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured."  Id.  Courts have "no legal authority to disregard" policy language that is unambiguous.  Cotton States Mut. Ins. Co. v. Hipps, 481 S.E.2d 876, 878 (Ga. Ct. App. 1997).  Finally, "contract disputes are well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court."  Nationwide Mut. Fire Ins. Co. v. Somers, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003).

The parties in this case do not dispute that Mobile Maintenance is the named insured on the Policy, nor do they dispute that only an "insured" party is eligible for uninsured motorist coverage and medical payments coverage.  The parties also

do not contest the language that appears in the Policy: to qualify as an "insured" for the purposes of the Endorsements when the named insured is a partnership (like Mobile Maintenance), a claimant must have been "occupying an insured auto or temporary substitute auto" at the time of injury. [Doc. 89, p. 4]; see also id. at 6. Julien was indisputably a pedestrian when she was struck by an uninsured motorist and thus falls outside the applicable definition of "insured." The plain terms of the Policy, then—by which this Court is bound—preclude her from recovering any benefits under the Endorsements. Respondents have not argued, and the Court does not perceive, that any ambiguity exists in the language at issue. See Ace Am. Ins. Co. v. Wattles Co., 930 F.3d 1240, 1252 (11th Cir. 2019) ("If the policy language is clear and unambiguous, the contract must be enforced according to its plain terms."); see also Hipps, 481 S.E.2d at 878 ("It is well settled that where no ambiguity in a policy of insurance exists, the courts must adhere to the contract made by the parties even if it is beneficial to the insurer and detrimental to the insured . . . ."). The Policy's language clearly and unambiguously dictates that Julien is not an "insured" and is thus ineligible for coverage. Petitioner has shown that no genuine issue of fact exists as to the terms of the Policy, and thus the burden shifts to Respondent to establish that a dispute of fact precludes summary judgment.

Although Respondents admit that the Policy exists, that it was issued to Mobile Maintenance and that it contains the language above, they nonetheless argue that they *intended* to procure a personal insurance policy in the name of Jesse Espinoza or Javier Espinoza.  Had they done so, Respondents contend, Julien would be covered under the Policy as a "relative" of the "named insured."[8] [Doc. 40-2, pp. 39, 46].

Respondents' arguments on this point are unavailing.  As the facts show, the Policy was issued to Mobile Maintenance, premiums were paid from Mobile Maintenance's account and Jesse Espinoza represented that the vehicle (a 2007 Dodge Ram) under the Policy would be used only for business purposes.  Nonetheless, Respondents claim that because the 2007 Dodge Ram is titled in Javier Espinoza's name, Petitioner could not have intended to provide coverage for this vehicle as to Mobile Maintenance only.  Georgia courts, though, have rejected the argument that the owner of a vehicle necessarily equals the insured party on a policy for that vehicle, finding this position "untenable." Pa. Lumbermens Mut. Ins. Co. v. Haney, 375 S.E.2d 293, 294 (Ga. Ct. App. 1988).  The fact that the

---

[8] If the named insured on the Policy is a natural person, the Uninsured Motorist Coverage Endorsement defines "insured" as including "a relative." [Doc. 40-2, p. 39].  Similarly, if the insured party is a natural person, an "insured" under the Medical Payments Coverage Endorsement includes "any relative when struck by a land motor vehicle of any type or a trailer while not occupying a motor vehicle." Id. at 46.

11

covered vehicle was titled to Javier Espinoza does not mean that he is automatically the named insured or that the parties intended as such.

Although Respondents admit that Mobile Maintenance is the named insured, they claim that this fact "does not demonstrate that the intent of the [P]olicy was not to afford the coverage to [Javier] Espinoza and his resident relatives." [Doc. 88, p. 10]. Respondents rely heavily on Purcell v. Allstate Insurance Co., 310 S.E.2d 530 (Ga. Ct. App. 1983), to support their position, but the facts of that case are easily distinguishable. In Purcell, the plaintiff was the sole proprietor of a business, Purcell Radiator Service, who purchased an insurance policy for the business's vehicle. Id. at 531. After the plaintiff's wife was injured by an uninsured motorist when she was a pedestrian, the insurer claimed that it owed no coverage because the wife was not a "family member" of the insured—i.e., of Purcell Radiator Service. Id. However, the Georgia Court of Appeals "reversed a judgment for the insurer, holding that since Purcell Radiator Service was a sole proprietorship, it was not a distinct entity, but merely a trade name used by Mr. Purcell." Pa. Lumbermens, 375 S.E.2d at 294. Importantly, Georgia courts have subsequently distinguished Purcell from insurance disputes involving other kinds of legal entities. See id. at 295 ("An essential difference between [Purcell] and the present case is that the named insured in this case, a corporation, is a distinct entity

which is capable of being insured in an insurance policy."); Bernard v. Nationwide Mut. Fire Ins. Co., 426 S.E.2d 29, 31 (Ga. Ct. App. 1992) (discussing Purcell and explaining that "[a] sole proprietorship was distinguished from a corporation on the basis that the former is not a distinct entity"). Respondents have not argued that Mobile Maintenance, a limited liability limited partnership, is not a distinct legal entity, and the terms of the Policy clearly contemplate that a partnership can serve as a named insured.

Respondents also cite Purcell for the proposition that an ambiguous contractual provision should be interpreted in favor of the insured party. See Purcell, 310 S.E.2d at 533 ("Where a provision in a policy is susceptible to two or more constructions, the courts will adopt that construction which is most favorable to the insured." (quoting Greer v. IDS Life Ins. Co., 253 S.E.2d 408, 409 (Ga. Ct. App. 1979))). Yet Respondents identify no language in the Policy that is susceptible to multiple interpretations. In the absence of ambiguous language, the Court need not reach the issue of adopting a certain construction.

Finally, Respondents contend that an issue of fact exists as to whether they intended to "convert" the USAA policy into a commercial policy when they applied for coverage from Petitioner. [Doc. 88, p. 13]. Again, Respondents cite to Purcell: "The construction placed upon a [contract] by the parties thereto, *as*

13

*shown by their acts and conduct*, is entitled to much weight and may be conclusive upon them." 310 S.E.2d at 533 (alteration in original) (quoting Copenhaver v. United Am. Inv. Co., 101 S.E.2d 203, 206 (Ga. Ct. App. 1957)).  Despite Respondents' contention, the facts do not support a conclusion that the parties' intention was to simply "switch" the USAA policy to Petitioner.  When Jesse Espinoza applied for the Policy, she indicated that the covered vehicle would be used only for business purposes.  Further, Jesse Espinoza acknowledged that Petitioner issued a policy in the name of Mobile Maintenance after she provided the vendor agreement and requested a policy that complied with its terms.  See [Doc. 84-5, p. 58].  She never contacted Petitioner to ask why the Policy was in the name of Mobile Maintenance, despite renewing the Policy.  See id. at 68.  As to Petitioner, its intent could not have been to issue a personal automobile policy in this instance:  Petitioner does not offer any personal automobile policies with coverage limits of $1,000,000.  See [Doc. 87-1, p. 3].

Further, the law weighs against Respondents' position about their supposed intent.  "The general rule is that insureds are chargeable with knowledge of the contents of their policies."  Se. Sec. Ins. Co. v. Empire Banking Co., 498 S.E.2d 282, 284 (Ga. Ct. App. 1998).  Insured parties "are presumed to know [the policy's] conditions if they intend to rely upon its benefits, or else they must find

14

out those conditions." Hipps, 481 S.E.2d at 878.  As such, Jesse Espinoza is presumed to know the Policy's terms, including who qualifies as an "insured" under its provisions.

As the foregoing analysis shows, the plain language of the Policy dictates that Julien is not eligible for coverage under the Uninsured Motorist Coverage Endorsement or the Medical Payments Coverage Endorsement.  Respondents have not identified any language in the Policy that is so ambiguous as to require this Court to interpret it, and the facts do not support Respondents' claim that they intended to procure a policy other than the one at issue in this case.  Accordingly, Petitioner has shown that it is entitled to summary judgment.

## CONCLUSION

The Court hereby **DECLARES** that Petitioner does not owe Respondents any coverage obligation with respect to any claim arising from the October 21, 2018 accident because Helene Julien is not an "insured" under the terms of the Policy.  Accordingly, Petitioner's Motion for Summary Judgment [Doc. 87] is **GRANTED**.  Petitioner shall refile the motion for default judgment as to Mobile Maintenance within ten days of this Order.

**SO ORDERED** this 17th day of June, 2022.

J. P. BOULEE
United States District Judge